The next case today is Keith Garfield Williams v. Merrick B. Garland, Appeal No. 20-2074. Attorney Conlon, please introduce yourself for the record and proceed with your argument. May it please the court for the petitioner Keith Williams, Justin Conlon. And we would ask the court to reserve two minutes of rebuttal time if we could. Yes. Thank you, Your Honor. We are asking the court to grant the petition for review in this case because the Board of Immigration Appeals committed two separate legal errors. First, they completely ignored a critical piece of evidence. In this case, a piece of evidence that the immigration judge explicitly said in her decision was the most important reason why she reached her decision. And second, the Board of Immigration Appeals broke with a general policy that they have announced by a settled course of adjudication to grant relief to applicants who are similarly situated to the petitioner, namely someone with one conviction that's more than 25 years old who presents significant positive aspects in this case. This court has recognized in Thompson v. Barr that it possesses jurisdiction to review legal errors made by the Board of Immigration Appeals in discretionary decisions. And while preparing for this oral argument, I did come across a decision from this court that was issued subsequent to the briefing in this case, Perez Trujillo v. Garland, 3-4-10, First Circuit, 2021. And in that case, the court granted an appeal where it found that the Board of Immigration Appeals failed to consider a particularly salient piece of evidence in regards to a discretionary form of relief. In that case, it was an application for adjustment of status. And the court said, despite the fact that the BIA mentioned the issue, because it ignored this particularly salient piece of evidence, it committed a legal error in regards to a discretionary decision. And it granted the appeal so that the Board of Immigration Appeals could explicitly review that particularly salient piece of evidence. And we would submit that this case is more similar to Perez Trujillo than to some of the other cases that this court has found raising this type of argument. Let me ask, here it's clear from the record, the administrative record, that the Board of Immigration Appeals did in fact cite the page number regarding the girlfriend's fiancé's testimony. So this is not like the Board of Immigration Appeals overlooked or did not even consider that testimony. So where would you distinguish that from? Well, the way that I would distinguish it would be that it certainly cited the page number, but there's lots of things that are obviously discussed in an immigration judge's decision citing a page number. And if the court would say to the BIA, if you just cite a page number, we're going to find that you considered pieces of evidence, then all the BIA could do is just cite every page number in an immigration judge's decision and say, we disagree, we overrule. And the court can never really know which pieces of evidence the board actually looked at. And I think there are two things that differentiate this case from the sort of run-of-the-mill type of complaints that this court typically sees in regards to pieces of evidence. First is that the immigration judge specifically said this piece of evidence was the most important reason why she granted relief. It's pretty rare. Just to follow up on Judge Halpy's question, the page number references are important, but also the BIA refers, acknowledges the positive equities weighing in his favor. That's clearly a reference to the equities that the IJ cited. The BIA talks about the important family ties. I think that's fairly read as a reference to the long relationship with his partner. So it seems a little hard to push this case into the category where the BIA has totally overlooked a critical piece of evidence that wasn't of importance to the IJ. We've also said that the BIA does not have to specifically identify every piece of evidence that it considered. So why aren't those general references to the equitable factors, the family ties, why isn't that enough to support the view that the BIA did consider this important information about the longstanding relationship with his partner? Well, I think the fact that the immigration judge specifically used the phrase most important reason. So if you're going to say the immigration judge was wrong and you're going to overrule her decision, it's just very strange that you wouldn't even mention, you know, the BIA decision doesn't even mention the witness's name, doesn't even acknowledge that she testified. It doesn't even say in the decision that they're acknowledging that she was in court at all. So because the immigration judge specifically used the phrase most important reason, it's just very weird for the BIA to say she was wrong, but not even explicitly acknowledge the sort of core substance of her decision. So I think that's what differentiates this case from the other cases that the court has seen because in none of those cases did the immigration judge say this one particular piece of evidence was the most important piece of evidence in the whole record. And also another thing that I wanted to bring up, I know this court and other courts are concerned of petitioners essentially playing a kind of parlor game of gotcha and just on appeal digging through the record, trying to find something and sort of saying, you both parties explicitly discussed this piece of evidence, placed emphasis on this piece of evidence and in their appeal papers of what the board of immigration, I'm sorry, the department of Homeland Security explicitly said to the board of immigration appeals, you should overrule the judge because the judge placed in their opinion, improper position and emphasis on this particular piece of evidence. So this isn't some surprising thing that we're just bringing up at the last minute to win, you know, sort of on a technicality, both parties explicitly fought about this piece of evidence and cited it in their briefing. And the judge said it was the most important reason for her decision. It just, I think would send a bad message to the BIA when they decide to overrule a judge's decision and don't even acknowledge what the most important piece of evidence the judge explicitly made her decision on. And there's really no way for the court to know if the BIA looked at it or not, because as I'm assuming the court is aware, the BIA is one of the most burdened administrative agencies in the federal government. And, you know, the judges in the BIA don't have a lot of time to review cases just because of their crushing workload. And it's certainly possible that the BIA judge or judges, you know, the two members of the panel, because there was a dissent in this case, that the two members of the panel that granted this just ran through the case so fast that they just overlooked this piece of evidence. So I think there's a reasonable chance that on remand, the BIA might say, you know, thanks for pointing this out, court. We actually did just miss this piece of evidence. Going back and looking at it again, maybe the petitioner is right and maybe we should have granted this relief. So I think this isn't just a remand for, you know, extending time, that there is a real chance the BIA might reach a different conclusion if this piece of evidence is pointed out to them. And then on the second aspect of the appeal, we're arguing that the Board of Immigration Appeals has created a general policy by a settled course of adjudication to grant relief to people similarly situated to the petitioner. Namely, one conviction that's 25 years or more, no other contact with law enforcement and significant positive equities in their case. And we cited to the court, you know, we looked through Westlaw, we looked through, there's one nonprofit in Virginia that keeps a limited database of unreported BIA decisions. I went through every single Westlaw case that I could find and every single case in that database and gave it to the court. I believe it was 76 total cases. There were no denials for anyone in that situation. And... Counsel, what is the, I mean, it's not a question of, would it be unduly burdensome for us to do this? But you say you cited 76 cases. Obviously, every case had its own factual circumstances. So, are you suggesting that in order to make a judgment that there is this settled course of adjudication that the BIA departed from in this case, that we're supposed to sort through those 76 cases and make a judgment that there is in fact that settled course of adjudication that the BIA is departed from here? I mean, there is something, frankly, a little bit unworkable and maybe unrealistic about that mode of analysis that you're urging upon us. I mean, is that what you're suggesting that we should do? And I'm not suggesting it's too much work. That's not the point. It just seems an uncertain and unwieldy basis on which to establish that there is a settled course of adjudication. I certainly agree that in many circumstances, it might be difficult. But I think in this case, the petitioner's case is an outlier. There's not too many people who are going to reach the BIA with a 25-year, you know, with a decades-old conviction and still be able to apply for relief. So, I think this is a very limited type of situation that a petitioner would ever even realistically be able to make this. And second, we're just building upon the court's decision in Thompson v. Barr, and the court explicitly said, and this court was relying on a Supreme Court decision in an immigration case in the past, basically saying that if the immigration authorities engage in, you know, a settled course of adjudication, they have to explain why they are stepping back from that. And also, I would point out that, you know, there is a burden on the parties. We're not saying that it's the court's duty to go through, you know, all the decisions. We went, you know, we provided, you know, the decisions, and that's why I submitted the supplement to the court. And, you know, one thing that I did want to point out on this issue would be, you know, the government, you know, as the Department of Justice, has access to a lot more, you know, the whole range of all unreported decisions of the BIA. And if our position on this was wrong, it would be easy for the government to just say, look, private petitioners only have access to a limited amount of cases. They're misreading it. Here you go, Your Honor. Here's 5, 10, whatever cases showing that their view of the BIA settled course of adjudication is wrong, but they didn't do that here. And I would take that, you know, silence as an implicit acknowledgement that we're right because they could very easily have said we're wrong. And also, I would point out that we raised this issue to the BIA below that in our brief, we cited a bunch of cases in which relief had been granted to people with this type of conviction and with this type of old conviction and said, hey, you've done this in the past. You should stick with the immigration judge. And again, at the BIA level, Department of Homeland Security has access to all these decisions. They could have come up and said, hey, you're wrong. We've denied this to lots of people. And they didn't do that. So I would take that. So what is the rule that emerges from those 76 cases that you say reflects a settled course of adjudication? What is the rule? Is it, for example, that if someone has been convicted when young of a serious sexual offense, and nevertheless, for the next 25 or 30 years, they have an unblemished record, that they are entitled to this kind of discretionary determination when dealing with cancellation of removal? Is that the rule that emerges from these 76 cases? Is it specific to the underlying criminal offense and the length of time where somebody has demonstrated that they've been completely rehabilitated? From our point of view, it would be based on the length of time, no other contact with law enforcement, and significant positive equities. And the Board of Immigration Appeals, even in their decision in this case, explicitly used the phrase, we find that the petitioner presents significant equities. Isn't it in those 76 cases, I would assume that there are many different underlying criminal convictions, right? I think they're not all of this kind, of the kind of underlying offense here, is that correct? Yes, that is correct. There were several cases with this type of sex offense, and the only ones that were denied were people that had multiple arrests or less than 25 years from the date of the conviction at the time relief was applied for. There were people who were granted relief who had only one incident with law enforcement and this type of conviction. So basically what we're saying to the BIA is... Let me ask you, do any of these cases that you cite, do they involve the rape of a 12 year old or close to 12 year old minor who happens to be very closely related to the petition? Because it would seem to me that it's within the authority of the scope of the BIA to determine that in the best interest of the United States to not withholding a removal to such a person. I do agree that it's a serious conviction. I did cite, which is on page 31 of our brief, one of the relief granted was a sexual contact with a child under the age of 14 in Ray David Bradford Rape. There's also another case in Ray Mario Acosta Campos where they granted the same relief to someone with a conviction for a lewd act on a child under the age of 14. So they have granted relief to people with convictions for sexual offenses on a minor. I certainly don't dispute that this is a serious conviction. Wait, counsel, before you go there, when you start talking about sex offenses involving a minor, I think you've cited somewhere between one and four cases. So is that a pattern of practice? Is that a course of adjudication? I take it you would argue that it is. Well, I would say that we would have two arguments on that point, your honor. One would be, we would say that it is and that the government has had an opportunity to rebut that and didn't. Second, I would say you can even step back from it and say that serious felonies, that could be seen as the pattern. I believe there's some of these reliefs. Yes, you made that argument. Additional follow-up questions from the court. We're considerably over time and you've reserved some time. So thank you, counsel, if you would mute your audio and video. Thank you, your honor. We'll hear from Mr. Finn. Yes, thank you, your honor. Steven Finn for the response to the attorney general. I'd like to start just to point out, there was a question from the court that indicated a discussion about cancellation of removal. But I think it's important to point out that this is actually under former section 212C of the Immigration Nationality Act. And there's no real discussion or dispute that petitioner was eligible for relief under former section 212C and that former section 212C was in fact, is in fact, a discretionary decision of the attorney general. Because it is a discretionary decision of the attorney general. The court's jurisdiction under USC 1252A2B and D is limited to questions of law or constitutional questions. And of course, there has been no constitutional question raised here. So it is petitioner's burden to find a question of law that is at issue. And we believe in both instances here today, that's incorrect. He has not raised one. And I would like to begin with the discussion about the immigration judge's decision and the board's decision about Ms. Rogers' testimony. If we look at page 76 of the record, the specific area of the IJ's decision counsel is referring to, the immigration judge says she gave significant weight to Ms. Rogers' testimony. And in the next sentence she says, she is the mother of a child who is thriving and feels that her father is an important part of her life. I would note that where the immigration, or excuse me, the board of immigration appeals refers to that testimony, it says the immigration judge also recognized the respondent's significant family ties in the United States. And here's the critical language, including his high school-aged daughter who is thriving in school and is close to her father. That is followed by citation to the immigration judge's decision. This case simply does not fall into that category of overlook, totally overlooking significant evidence. There, the board hits it on the head. They are considering Ms. Rogers' testimony. I would also note that... Well, counsel, it might be a little closer than that. Mightn't it? The board could be read to be referring to her testimony about the relationship with the daughter as opposed to her, what might be considered separate testimony about his moral rehabilitation. Acknowledging that the two are somewhat inclined. Could you just address the moral rehabilitation point? Yes. The board certainly did not ignore rehabilitation. And in fact, in its last paragraph, the board specifically says, although we recognize the passage of time since respondent's offense and evidence of his rehabilitation, the court also noted that the IJ heavily weighted petitioner's rehabilitation, including no arrest or conviction since 1993. The board was very specific about the question of rehabilitation. And so, though not cited by either the petitioner or respondents here, there is a body of law from Marin that says that rehabilitation is an important consideration in former 212C and cancellation cases. So, I think the board was being very careful to point out that in fact it had considered his rehabilitation. And yes, there was significant evidence on that. The question then is, petitioner gets into this in his argument, is a question of weighting. Discussing weighting. But the fact finding by the board, excuse me, the decision by the board on the fact finding was that there was no clear error. The weighting of evidence, what the immigration judge considered weighty or less significant, the board does not. The board does not attempt in the actual finding element of its decision to disregard any of the weighting. However, when the board steps to its discretionary finding, there the board comes to a conclusion that the immigration judge erred. And that discretionary portion of the decision is what section 1252A2B talks to. This court lacks jurisdiction to reconsider or to review the discretionary portion of the board's decision. So, for that reason... Counsel, excuse me, it's a pretty basic proposition of law, certainly in other non-immigration contexts, that if a discretionary decision is informed by the failure to consider a critical factor that was relevant to the discretionary determination, or if too much emphasis is given to another factor, it plays into the discretionary determination.  And the argument here is that the BIA failed to consider, at least failed to explain with sufficient particularity, that it had taken into consideration the critical testimony of Miss Rogers. So that, I mean, if we were to deem that an error of law, that would not then preclude us from sending it back, right? If it was a jurisdictional issue relating to the exercise of discretion, we would have concluded that that discretionary determination was flawed by error of law. We can do that, right? Yes, I believe the Thompson case, and I believe also the Suave case, would indicate that that is where this court has made conclusions. However, in this case, the premise is incorrect. There was no total overlooking, full omission, no consideration of the evidence. In fact, the board's decision, as I've said, in terms of both the rehabilitation and the daughter's condition, the mother's testimony, the board provided enough indication that it considered that testimony. The legal rule of total overlooking was not violated. We don't contest that 1252A2D does, in fact, say that if there's a legal error, that, of course, the court still has jurisdiction over that. That's a plain reading of the statute, and that's what Thompson says as well. There's no dispute there. Well, counsel, I mean, this is an unusual case in that you have the BIA in a split decision overturning the decision of the IJ. Is there perhaps a greater burden of explanation in the unusual circumstance that we have here, where you have the IJ going one way, you have a member of the panel dissenting? It seems to me that there may well be an argument that in this unusual circumstance, we can require more of the board by way of an explanation. This is a very troubling case. I understand the BIA has to make many difficult decisions on a high volume basis, but on its face, the outcome here seems awful, really. I mean, you have clearly a terrible underlying crime, no question about that, but then many, many years of rehabilitation, no question about that, nobody's challenging that, a new If this individual is then torn away from all that, that just seems terrible. So under this circumstance, why shouldn't there be a greater burden of explanation than might be in the usual case, especially, again, where you're overturning the decision of the IJ and you have a dissent from a panel member? Well, at this point, I haven't run across a case in the reasoned consideration, jurisprudence of this court, or more broadly, that would very specifically say that where there's a split decision and overturning, more is required. I haven't found a case that actually says that. The court here in its last paragraph went through a very, you know, somewhat briefly as the board does, its rationale, recognizing the great equities in its favor, but it did cite specifically the matter of Tijon, and did say there that their ultimate responsibility is for what's the best interest of the United States. They could have written more, Your Honor, they certainly could have, but we believe that is sufficient in the realm of the administrative adjudication here to explain why the board decided to depart from or find error with the immigration judge's decision. That's a discretionary way. I agree, Your Honor, there could have been more written, but could have been, I can't find a legal rule, even in the reasoned consideration realm of cases, that requires that. And I think the board has to give an explanation, and here it did so. As we get to that issue, I'd like to turn briefly to the question of Thompson and the application of the Thompson case in this case. The language from the Thompson case that's being cited comes from the Supreme Court case in Yu-Shau-Diang, and it's kind of interesting language, where the Supreme Court says, where an administrative agency announces and follows, and here we have a hyphen, an aside, by rule or settled course of adjudication, and then hyphen ends, a general policy by which its exercise of discretion will be governed, an irrational departure could constitute action that must be overturned as arbitrarily capricious. Of course, the APA standard of review. Where I find this language interesting is that for all of the discussion about the hyphenated language by rule or settled course of adjudication, what is lost in the argument is what comes before and afterwards. That is, the agency announces and follows a general policy by which it exercises discretion. That's the Marin case. In this case, the board cited Marin, the immigration judge cited Marin, and if we go through the 70-odd cases that petitioners proffered here, it cites Marin. They cite Marin over and over and over again. So here, the board did announce a rule. It's Marin. And there's a settled course of adjudication in the former 212C realm where Marin provides the background factors for the consideration of discretion. And there are other court cases like Edwards that have come from the Marin general statement. But inevitably, the exercise of discretion that the board has outlined is governed by Marin. What we struggle for in this case, in the petitioner's second assignment of error, is a legal rule. There just is not a legal rule, a legal rule that says 25 or more years, you know, rehabilitation and multiple convictions. There is simply no rule. What we have in his 71 cases are many examples of the exercise of discretion. And of course, thank you, your honor. Mr. Conlon, you have two minutes. Thank you, your honors. So I just wanted to point out two things on our rebuttal. So I did just review the BIA decision. And despite the fact that it does have a lot of citations, it actually doesn't cite the page of the immigration judge decision where she says that the testimony of the witness is the most important reason, which is page 7 of the immigration judge decision, page 66 of the administrative record, where they say this is the most important reason. And if you look to the BIA decision, which is joint appendix 3 and 4, it never cites page 7. So I think there isn't, it cites some pages, but it doesn't even cite the page where the judge uses the phrase most important reason. And also I would point out, as the government made their argument, they still never said, the BIA never says anywhere, there's this witness and this witness presented this testimony. It just discusses general things. And again, when the judge says she placed substantial weight, most important reason, and there's a dissent, there should be some reason presented and some explanation as to why this evidence wasn't enough to win when the judge said it was. And then also I'd point out, under the BIA matter of Marin decision that the government discusses as creating the 212C framework, the reason why we cited all those cases is to say the BIA has applied this matter of Marin standard and everyone like the petitioner has always won. And so why isn't the petitioner winning when every other petitioner like him has won? And that's what we would say is the settled course of adjudication that within the matter of Marin framework, every person like Mr. Williams has won. Thank you. Thank you, Your Honors. That concludes arguments in this case. Attorney Conlon and Attorney Finn, you should disconnect from the hearing at this time.